1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                           EASTERN DISTRICT OF CALIFORNIA

10

11   MARTIN HOFFMAN,

12                  Plaintiff,                    No. 2:17-cv-02471-TLN-JDP

13

14          v.                                    **ORDER**

15   WILDERNESS MEDICAL SOCIETY,

16                  Defendant,

17

18          This matter is before the Court on Defendant Wilderness Medical Society's ("Defendant")

19   Motion for Summary Judgment.  (ECF No. 9.)  Plaintiff Martin Hoffman ("Plaintiff") filed a

20   response.  (ECF No. 25.)  Defendant replied.  (ECF No. 28.)  For the reasons set forth below, the

21   Court hereby GRANTS in part and DENIES in part as moot Defendant's motion.

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28

1    **I.    FACTUAL AND PROCEDURAL BACKGROUND**

2    This case arises out of Defendant's termination of Plaintiff as Editor-in-Chief of the

3    Journal of Wilderness and Environmental Medicine.  (ECF No. 1-1 ¶¶ 2, 4; ECF No. 10 at 7.)

4    Plaintiff alleges Defendant fired him because of the views expressed in an article he wrote six

5    months before he was terminated.  (ECF No. 1-1 ¶ 4; ECF No. 10 at 7.)  Plaintiff filed this action

6    in Sacramento County Superior Court on September 7, 2017, alleging claims for: (1)

7    whistleblower retaliation; (2) breach of contract; (3) wrongful termination in violation of public

8    policy; (4) intentional infliction of emotion distress ("IIED"); (5) defamation; and (6) negligent

9    infliction of emotional distress ("NIED").  (ECF No. 1-1.)  Defendant removed the action to this

10   Court based on diversity jurisdiction on November 22, 2017.  (ECF No. 1.)  On April 4, 2019,

11   Defendant filed the instant motion for summary judgment.  (ECF No. 9.)

12   **II.    STANDARD OF LAW**

13   Summary judgment is appropriate when the moving party demonstrates no genuine issue

14   of any material fact exists and the moving party is entitled to judgment as a matter of law.  Fed.

15   R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Under summary

16   judgment practice, the moving party always bears the initial responsibility of informing the

17   district court of the basis of its motion, and identifying those portions of "the pleadings,

18   depositions, answers to interrogatories, and admissions on file together with affidavits, if any,"

19   which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v.*

20   *Catrett*, 477 U.S. 317, 323 (1986).  Summary judgment should be entered against a party who

21   does not make a showing sufficient to establish the existence of an element essential to that

22   party's case, and on which that party will bear the burden of proof at trial.

23   If the moving party meets its initial responsibility, the burden then shifts to the opposing

24   party to establish that a genuine issue as to any material fact does exist.  *Matsushita Elec. Indus.*

25   *Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *First Nat'l Bank of Ariz. v. Cities Serv.*

26   *Co.*, 391 U.S. 253, 288–89 (1968).  In attempting to establish the existence of this factual dispute,

27   the opposing party may not rely upon the denials of its pleadings, but is required to tender

28   evidence of specific facts in the form of affidavits, and/or admissible discovery material, in

2

1    support of its contention that the dispute exists.  Fed. R. Civ. P. 56(c).  The opposing party must

2    demonstrate that the fact in contention is material, *i.e.*, a fact that might affect the outcome of the

3    suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that

4    the dispute is genuine, *i.e.*, the evidence is such that a reasonable jury could return a verdict for

5    the nonmoving party.  *Id*. at 251–52.

6        To establish the existence of a factual dispute, the opposing party need not establish a

7    material issue of fact conclusively in its favor.  It is enough that "the claimed factual dispute be

8    shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."

9    *First Nat'l Bank of Ariz.*, 391 U.S. at 288–89.  Thus, the "purpose of summary judgment is to

10   'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for

11   trial.'"  *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (quoting Federal Rule of Civil Procedure

12   ("Rule") 56(e) advisory committee's note on 1963 amendments).

13       In resolving the summary judgment motion, the court examines the pleadings, depositions,

14   answers to interrogatories, and admissions on file, together with any applicable affidavits.  Fed.

15   R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982).  The evidence

16   of the opposing party is to be believed and all reasonable inferences that may be drawn from the

17   facts pleaded before the court must be drawn in favor of the opposing party.  *Anderson*, 477 U.S.

18   at 255.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

19   obligation to produce a factual predicate from which the inference may be drawn.  *Richards v.*

20   *Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir.

21   1987).  Finally, to demonstrate a genuine issue that necessitates a jury trial, the opposing party

22   "must do more than simply show that there is some metaphysical doubt as to the material facts."

23   *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.  "Where the record taken as a whole could not lead

24   a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Id*. at

25   587.

26       **III.   ANALYSIS**

27       Defendant seeks summary judgment on all six of Plaintiff's claims.  (ECF No. 10.)

28   Plaintiff seeks in his opposition to abandon his whistleblower, IIED, and defamation claims.

1   (ECF No. 25 at 19.)  Defendant does not object.  (ECF No. 28 at 14.)  The Court will construe

2   Plaintiff's request as a motion for voluntary dismissal.  Seeing no reason to require Plaintiff to

3   litigate claims he seeks to abandon, the Court GRANTS his motion under Rule 41(a)(2).

4   Accordingly, Defendant's motion for summary judgment on Claims One, Four, and Five is

5   DENIED as moot. In his opposition, Plaintiff contests Defendant's motion as to Plaintiff's breach

6   of contract, wrongful termination, and NIED claims.  (ECF No. 25 at 14–19.)  The Court will

7   consider each claim in turn.

8                            A.    Claim Two: Breach of Contract

9           Defendant argues Plaintiff's breach of contract claim fails because the parties never

10  agreed to a for-cause employment contract and accordingly, Defendant could terminate Plaintiff

11  "at-will."  (ECF No. 10 at 19 (citing Cal. Lab. Code § 2922).)  Defendant argues in the alternative

12  it had "good cause" to fire Plaintiff because of Plaintiff's "inability to work well in a managerial

13  capacity."  (*Id.* at 20.)  In opposition, Plaintiff asserts the parties entered into an implied-in-fact

14  employment contract guaranteeing Plaintiff's employment absent good cause for termination.[1]

15  (ECF No. 25 at 14–15.)  In reply, Defendant argues Plaintiff failed to present evidence of an

16  implied-in-fact agreement and Plaintiff concedes Defendant's argument in the alternative by

17  failing to address it.  (ECF No. 28 at 6–13.)  As the Court finds Plaintiff has failed to present

18  evidence creating a genuine issue as to whether the parties impliedly agreed only to terminate

19  Plaintiff for good cause, it does not reach Defendant's alternative argument or objections to

20  Plaintiff's declaration.  (ECF No. 29.)

21  ///

22  _____

23  [1]    Plaintiff also argues in the alternative Defendant's conduct constituted a breach of the
    covenant of good faith and fair dealing implied in the parties' at-will employment agreement.
24  (ECF No. 25 at 15–16.)  However, Plaintiff failed to plead a breach of an implied covenant.
    (ECF No. 1-1); *see Smith v. City & Cnty. of S.F.*, 225 Cal. App. 3d 38, 48–49 (1990) (noting that
25  although an action for the breach of the implied covenant of good faith and fair dealing is
    premised on a contractual relationship, tort remedies may be available in certain circumstances).
26  Consequently, Defendant has not been provided the minimal notice of the claims against it
    guaranteed by Rule 8, and Plaintiff's alternative breach claim is not presently before the Court.
27  *Cf. Moeller v. Taco Bell Corp.*, 966 F. Supp. 2d 899, 904 (N.D. Cal. 2013) (holding alleged ADA
    violations not pleaded cannot be incorporated into the case on summary judgment).

28

Under California law, an implied-in-fact contract requires the same elements as an express contract but is "manifested by conduct" rather than words. *See* Cal. Civ. Code § 1621. "An implied contract . . . must be founded upon an ascertained agreement of the parties to perform it, the substantial difference between [express and implied contracts] being the mere mode of proof . . . ." *Gorlach v. Sports Club Co.*, 209 Cal. App. 4th 1497, 1507 (2012). Implied-in-fact contracts may govern the employer-employee relationship and are created under the traditional rules of contract formation. *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 680–81 (1988) ("Agreement may be shown by the acts and conduct of the parties, interpreted in the light of the subject matter and of the surrounding circumstances." (internal quotation marks and citation omitted)). Such agreements may overcome the statutory presumption all employment is at-will if there is evidence the parties agreed the employer's power to terminate would be limited in some way. *Id.* at 680; *see also* Cal. Lab. Code § 2922 ("An employment, having no specified term, may be terminated at the will of either party on notice to the other."). In the employment context, an implied for-cause guarantee may be shown by circumstantial evidence, including "the personnel policies or practices of the employer, the employee's longevity of service, actions or communications by the employer reflecting assurances of continued employment, and the practices of the industry in which the employee is engaged." *Kovatch v. Cal. Cas. Mgt. Co.*, 65 Cal. App. 4th 1256, 1275–76 (1998) (quoting *Foley*, 47 Cal. 3d at 680), *abrogated on other grounds by Aguilar v. Atl. Richfield Co.*, 25 Cal. 4th 826 (2001).

Defendant submitted uncontroverted evidence the at-will presumption should apply here because Plaintiff was not employed pursuant to a specified term. *See* Cal. Lab. Code § 2922. At his deposition, Plaintiff admitted there was no written employment agreement. (ECF No. 22-20 at 12, 80.) Plaintiff also conceded there were no express terms of his employment as Editor-in-Chief other than a starting date, a transition period, compensation, and a vague expectation he "enhance the journal." (*Id.* at 14.) The parties did not discuss termination until Plaintiff was fired. (*Id.* at 81.) Although Plaintiff's Complaint alleges he made requests to renew an employment contract with Defendant, he admitted in his deposition he made no such attempts. (*Id.* at 82–83.) Therefore, absent a specified term of employment, the at-will presumption

1   applies.

2          Plaintiff, attempting to rebut the presumption, only presents evidence of his perception of

3   the employment agreement — that is, he provides no evidence of mutual assent to provide

4   Plaintiff for-cause protections.  Plaintiff points to paragraphs five, six, and seven of his

5   declaration to show an implied agreement existed to fire Plaintiff only for cause.  (ECF No. 25 at

6   14.)  In paragraph five of his declaration, Plaintiff states he understood his employment by

7   Defendant to be subject to for-cause protection because he has only ever worked as a public

8   employee with such protections.  (ECF No. 24 ¶ 5.)  In paragraph six, Plaintiff states the board

9   members who hired him were mostly employees of public universities, and that it was his

10  intention to serve as Editor-in-Chief as long as he felt he was making a valuable contribution.  (*Id.*

11  at ¶ 6.)  Finally, in paragraph seven, Plaintiff states he was told by the interview committee his

12  predecessor was Editor-in-Chief for five years.  (*Id.* at ¶ 7.)

13         Although Plaintiff may have been under the impression he could only be fired for good

14  cause, he has presented no evidence that impression was based on Defendant's conduct.

15  Plaintiff's subjective expectation did not bind Defendant absent some evidence Defendant

16  harbored the same expectation.  California courts have declined to find implied-in-fact

17  agreements between employers and employees on far more evidence than Plaintiff offers here.

18  *See Kelly v. Stamps.com Inc.*, 135 Cal. App. 4th 1088, 1102–03 (2005) (no binding for-cause

19  agreement created by bonus schedule); *Horn v. Cushman & Wakefield W., Inc.*, 72 Cal. App. 4th

20  798, 817–18 (1999) (positive performance reviews, salary increases, and vague assurances of

21  future promotion insufficient to create binding implied-in-fact agreement); *Kovatch*, 65 Cal. App.

22  4th at 1275–76 (same).  Plaintiff's declaration stating the interview panel told him how long his

23  predecessor held the position is not evidence that term was meant to apply to him.  Therefore,

24  Plaintiff has failed to present evidence sufficient to create a genuine issue as to whether the

25  parties created an implied-in-fact employment agreement that protected Plaintiff from termination

26  absent good cause.  Accordingly, Defendant could fire Plaintiff for any reason not prohibited by

27  law and did not breach a contract between the parties by so doing.  Accordingly, Defendant's

28  motion for summary judgment as to Plaintiff's breach of contract claim is GRANTED.

1              B.      Claim Three: Wrongful Termination in Violation of Public Policy

2              Plaintiff's wrongful termination claim is based on Plaintiff's allegation that Defendant's

3    firing of Plaintiff violated California Business & Professions Code § 2056, which prohibits

4    employers from retaliating against physicians who advocate for medically appropriate health care

5    for their patients.  (ECF No. 25 at 16–18); *see* Cal. Bus. & Prof. Code § 2056.  Defendant argues

6    § 2056 is inapplicable.  (ECF No. 10 at 15–17.)  Specifically, Defendant contends Plaintiff's

7    deposition testimony illustrates the conduct giving rise to this dispute was not the provision of

8    health care, Plaintiff's termination did not impair his ability to care for patients, and the topic of

9    Plaintiff's journal article was not medically appropriate care.  (*Id.* at 16–17.)  In opposition,

10   Plaintiff argues the view expressed in Plaintiff's journal article need not be universally accepted

11   among the medical community to constitute medically appropriate care.  (ECF No. 25 at 18.)

12   Plaintiff suggests the "temporal proximity" between Plaintiff authoring the subject article and his

13   termination permits an inference of retaliation.  (*Id.* at 17.)  In reply, Defendant reiterates his

14   argument that Plaintiff's conduct is not protected by § 2056 and argues Plaintiff's claim that his

15   termination was not due to unprofessional behavior is not supported by the evidence.  (ECF No.

16   28 at 13.)  Because Plaintiff did not provide medical care to patients in his role as Editor-in-Chief,

17   the Court does not reach the parties' alternative arguments or Defendant's objections to Plaintiff's

18   declaration.  (ECF No. 29.)

19           An employer's violation of § 2056 may provide the basis for a wrongful termination in

20   violation of public policy action.  *See Khajavi v. Feather River Anesthesia Med. Group*, 84 Cal.

21   App. 4th 32, 43–44 (2000).  As stated, § 2056 protects physicians from retaliation for advocating

22   for medically appropriate health care for their patients.  Cal. Bus. & Prof. Code § 2056(c).  A

23   plaintiff seeking to recover for violation of § 2056 must prove two elements: (1) the defendant

24   fired the plaintiff principally for advocating for medically appropriate health care for her patients;

25   and (2) the plaintiff (a) appealed the defendant's decision to deny payment for a service, or (b)

26   protested any decision, policy, or practice of defendant's that plaintiff reasonably believed

27   impaired her ability to provide medically appropriate health care to her patients.  *In re Pomona*

28   *Valley Med. Group, Inc.*, 476 F.3d 665, 673 (9th Cir. 2007); *see also* Cal. Bus. & Prof. Code §§

1   2056(b)–(c).

2          Section 2056(a) identifies the purpose of the statute as protecting "physicians who

3   advocate for medically appropriate health care for their patients pursuant to *Wickline v. State*."

4   Cal. Bus. & Prof. Code § 2056(a).  As a California Court of Appeal has explained in depth,

5   *Wickline* imposes a duty on physicians to provide patient care pursuant to their medical judgment

6   regardless of limitations imposed by third-party payors.  *Wickline v. State*, 192 Cal. App. 3d 1630,

7   1645 (1986); *see Khajavi*, 84 Cal. App. 4th at 48–49.  Thus, "'[a]dvocat[ing] for medically

8   appropriate health care . . . pursuant to *Wickline*' [in § 2056(a) means] advocating for medically

9   appropriate health care pursuant to the responsibility established by *Wickline*."  *Khajavi*, 84 Cal.

10  App. 4th at 49 (emphasis omitted).

11         There is no dispute that Plaintiff did not provide health care to patients as Editor-in-Chief

12  of the Journal of Wilderness and Environmental Medicine.  (ECF No. 22-20 at 49–50; *see* ECF

13  No. 24 ¶¶ 8–10 (describing Plaintiff's duties at the journal).)  However, Plaintiff identifies

14  paragraphs 20 and 43 of his declaration as evidence of the "effect of the subject medical advocacy

15  on patient care."  (ECF No. 25 at 18.)  Plaintiff discusses his work and thoughts on hydration in

16  paragraph 20.  (ECF No. 24 ¶ 20.)  Plaintiff does not mention patient care.  (*Id.*)  In paragraph 43,

17  Plaintiff states it is his obligation as a physician to "[ensure] proper information is presented in

18  the scientific literature, which ultimately diffuses down to users (patients), especially when lives

19  are at stake."  (*Id.* at ¶ 43.)  However, this seemingly self-imposed obligation is not the one

20  identified in *Wickline*.  Plaintiff provides no argument as to why § 2056 should be read to

21  encompass this broader duty to ensure accurate scholarship, assuming it exists, in addition to the

22  duty imposed in *Wickline* to provide appropriate care to one's patients.  (*See* ECF No. 25.)  The

23  cases cited by the parties all deal with direct patient care, and the Court cannot find any authority

24  expanding the protections of § 2056 to apply to those whose influence over patient care is as

25  attenuated as was Plaintiff's when working for Defendant.  *See, e.g.*, *In re Pomona Valley Med.*

26  *Group, Inc.*, 476 F.3d at 673–74 (holding cardiologist plaintiff stated a claim under § 2056 when

27  he alleged defendant healthcare network impeded plaintiff's ability to order appropriate tests for

28  patients); *Sarka v. Regents of the Univ. of Cal.*, 146 Cal. App. 4th 261, 274–75 (2006) (reasoning

1    medically appropriate care is determined by reference to individual patient treatment); *Khajavi*,

2    84 Cal. App. 4th at 44–45 (reversing judgment against an anesthesiologist plaintiff whose

3    contract was not renewed after he disagreed with a surgeon about the medical wisdom of

4    subjecting a particular patient to cataract surgery).

5          In sum, Plaintiff's role as Editor-in-Chief does not fall within the scope of protection

6    provided by § 2056 because Plaintiff did not provide medical care to patients.  Therefore,

7    Defendant's motion for summary judgment as to Plaintiff's wrongful termination in violation of

8    public policy claim is GRANTED.

9                          C.    Claim Six: Negligent Infliction of Emotional Distress

10         Defendant argues Plaintiff's NIED claim is subject to summary judgment because

11   Defendant did not owe a duty to Plaintiff not to fire him for unprofessional conduct, Plaintiff did

12   not suffer serious emotional distress, and Defendant's termination of Plaintiff was privileged

13   under California Civil Code § 47(a).  (ECF No. 10 at 25–26.)  In opposition, Plaintiff states

14   without explanation that Defendant's treatment of him constituted tortious conduct likely to lead

15   to emotional distress.  (ECF No. 25 at 18.)  In reply, Defendant reiterates its argument Plaintiff

16   did not suffer serious emotional distress and argues Plaintiff conceded Defendant's privilege

17   argument by failing to rebut it.  (ECF No. 28 at 14.)  Because the Court finds Plaintiff did not

18   suffer serious emotional distress, it does not reach Defendant's alternative arguments or

19   evidentiary objections.  (ECF No. 29.)

20         "Negligent infliction of emotional distress, which is simply the tort of negligence,

21   contains the traditional elements of duty, breach of duty, causation and damages." *Jacoves v.*

22   *United Merch. Corp.*, 9 Cal. App. 4th 88, 107 (1992) (citing *Burgess v. Superior Ct.*, 2 Cal. 4th

23   1064, 1072 (1992)).  The California Supreme Court has "made it clear that to recover damages

24   for emotional distress on a claim of negligence where there is no accompanying personal,

25   physical injury, the plaintiff must show that the emotional distress was 'serious.'" *Wong v. Jing*,

26   189 Cal. App. 4th 1354, 1377 (2010) (citing *Molien v. Kaiser Found. Hosps.*, 27 Cal. 3d 916,

27   927–30 (1980)); *see also id.* at 1378 (no material difference between necessary distress for NIED

28   and IIED claims.  "[S]erious [emotional] distress may be found where a reasonable [person],

normally constituted, would be unable to adequately cope with the stress engendered by the

circumstances of the case." *Molien*, 27 Cal. 3d at 928 (citation and internal quotation marks

omitted).  Symptoms such as being upset, lost sleep, nausea, and generalized anxiety are

insufficient.  *Hughes v. Pair*, 46 Cal. 4th 1035, 1051 (2009); *Wong*, 189 Cal. App. 4th at 1377.

However, symptoms such as anxiety, chest tightness, heart palpitations, panic attacks, depression,

insomnia, a serious drinking problem, and diagnosed post-traumatic stress disorder may rise to

the level of serious emotional distress.  *Kelly-Zurian v. Wohl Shoe Co.*, 22 Cal. App. 4th 397, 410

(1994).

Defendant submits Plaintiff's deposition testimony to show Plaintiff did not suffer serious

emotional distress.  Plaintiff testified his distress manifested itself largely as a "preoccupation

with all of this and a regular review of what happened, how did this happen, and I recall that, for

the bulk of the year, I had some thoughts about this virtually every day . . . ." (ECF No. 22-20 at

90–91.)  In addition, Plaintiff testified he suffered from sleep problems and consumed

approximately one glass of wine or beer nearly every evening.  (*Id.* at 92–93.)  Plaintiff never

sought any treatment for his distress.  (*Id.* at 87–89.)  He did not take any medications for his

distress.  (*Id.* at 91.)  As the cases cited above illustrate, Plaintiff's ruminations did not rise to the

level of serious emotional distress.  Therefore, Defendant has met his initial burden of showing

Plaintiff cannot prove every element of his claim.

Plaintiff cites paragraphs 20 and 41 to 44 of his deposition as evidence of serious

emotional distress.  (ECF No. 25 at 18.)  Paragraphs 20, 42, 43, and 44 do not mention Plaintiff's

distress or any symptoms resulting from it.  (ECF No. 24 ¶¶ 20, 42–44.)  In paragraph 41,

Plaintiff adds to his deposition testimony, stating he suffered from "irritability and depression, . . .

loss of concentration . . ., and loss of energy and motivation."  (*Id.* at ¶ 41.)  In addition, Plaintiff

states his depression "objectively compromised" some of his work, "interfered with interpersonal

relationships[,] and resulted in [his] increased consumption of alcohol."  (*Id.*)  Finally, Plaintiff

adds he continues to suffer these symptoms, although they are not as severe as they were in 2016.

(*Id.*)  Compared with the diagnosed conditions suffered by the plaintiff in *Kelly-Zurian*, Plaintiff's

ailments here are not intolerable, or even serious enough to warrant treatment.  *Kelly-Zurian*, 22

Cal. App. 4th at 410. Although Plaintiff may have been severely disappointed or even morose because of his termination, that mood does not substantially differ from what most professionals would experience if fired.

Therefore, Plaintiff fails to create a genuine issue as to whether he suffered serious emotional distress because of his treatment by Defendant, a necessary element of his NIED claim. Accordingly, Defendant's motion for summary judgment as to Plaintiff's NIED claim is GRANTED.

## IV.   CONCLUSION

For the foregoing reasons, the Court hereby GRANTS in part and DENIES in part Defendant's Motion for Summary Judgment (ECF No. 9) as follows:

1. Defendant's motion as to Plaintiff's Claims One, Four, and Five is DENIED as moot; and

2. Defendant's motion as to Plaintiff's Claims Two, Three, and Six is GRANTED.

The Clerk of the Court is directed to enter judgment in favor of Defendant and close this case.

IT IS SO ORDERED.

Date:  November 8, 2021

Troy L. Nunley
United States District Judge